UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

CARLTON E. McINTOSH, SR.,     )
                               )
     Plaintiff,          )        Case No.
                               )     5:21-cv-236-JMH
V.                          )
                               )
COOKIE CREWS, et al.,      )
                               )    **MEMORANDUM OPINION**
     Defendants.         )       **AND ORDER**

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Carlton E. McIntosh, Sr., is a state prisoner currently confined at the Blackburn Correctional Complex ("BCC") located in Lexington, Kentucky. Proceeding without an attorney, McIntosh previously filed a civil complaint against prison officials pursuant to 42 U.S.C. § 1983. [R. 1].

McIntosh has now filed an amended complaint [R. 8], although he has not filed a formal motion seeking leave to file an amended complaint.[1] Even so, the Federal Rules of Civil Procedure provide that a plaintiff is entitled to amend his pleading once as a matter of right if done within twenty-one days after serving it. Fed. R.

_____

[1] While McIntosh's amended complaint is not filed on the form approved for use by this Court as required by Local Rule 5.3, McIntosh has included the information required by the Court's form and has organized his claims using numbered paragraphs. Thus, the Court will accept McIntosh's amended complaint for filing, notwithstanding its failure to technically comply with the requirements of Local Rule 5.3.

Civ. P. 15(a)(1)(B); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). Because the defendants have not yet been served with process, McIntosh is entitled to amend his complaint as a matter of right. His submission will be construed as a motion for leave to file an amended complaint and will be granted. Because "[a]n amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 589 (6th Cir. 2013), McIntosh's amended complaint supersedes (or replaces) his original complaint and is now the operative pleading in this action.

By separate order the Court has granted McIntosh's motion to proceed without prepayment of the filing fee. [R. 7]. Thus, the Court must conduct a preliminary review of McIntosh's amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

The Court evaluates McIntosh's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are

liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Even so, a complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8.

## I.

The factual allegations of McIntosh's amended complaint are organized by three subsections, two of which are closely related: (1) "Failure to Provide Reasonable Safety"; (2) "Failure to Provide a Safe Sleeping Environment"; and (3) "Denial of Medical Care." [R. 8, at 4-5, 8]. In the preliminary statement of his complaint, McIntosh identifies his legal claims for which he seeks relief as follows: (1) denial of medical care in violation of the Eighth Amendment, brought pursuant to 42 U.S.C. § 1983; and (2) "the torts of gross negligence," brought pursuant to Kentucky law. [R. 8, at 2]. He also refers to malpractice claims in relation to his medical care.

## A.

The "failure to provide reasonable safety" and "failure to provide a safe sleeping environment" subsections of McIntosh's amended complaint both relate to an incident that occurred during

the night of March 15-16, 2021, in which McIntosh appears to have fallen out of his bed in his sleep.  [R. 8, at 4-7, ¶¶ 11-17]. McIntosh alleges that he was transferred to the Southeast State Correctional Complex ("SSCC") located in Wheelwright, Kentucky on March 15, 2021.  According to McIntosh, he was assigned to a top bunk, even though he had been bottom bunk/bottom floor restricted since 2014.  [R. 8, at 4-5, ¶ 11].  McIntosh alleges that the nurse told him that he would have to remain on the top bunk for a few days until she could reassign him.  He then alleges that he went to sleep and, when he was awakened the next morning (March 16), he was "discombobulated and . . . in a pool of blood."  *Id.*

According to McIntosh, "the bunks inside the cells at SSCC were wrongly and improperly installed upside down," which he alleges was done with "deliberate indifference" to his health and safety.  McIntosh claims that unidentified "prison officials" knew that the bunks were wrongly and improperly installed.  [R. 8, at 5, ¶ 13].  He states that, after his fall, he learned from other inmates that there were other "reported and non-reported incidents of inmates sliding off the top bunks while asleep."  [R. 8, at 6, ¶ 15].

Based on these allegations, he brings claims against Larry Chandler (Warden of SSCC), whom he claims "knew or should have known that the bunks inside the cells were wrongly installed," *Id.*

4

at ¶ 14, and Cookie Crews (Commissioner of the Kentucky Department of Corrections ("KDOC")).  He claims that both Chandler and Crews "were deliberately indifferent to plaintiff's right to be free from cruel and unusual punishment" in violation of McIntosh's Eighth Amendment rights.  [R. 8, at 6-7, ¶ 16-17].  He also alleges that Crews "is in charge of all administrative duties at SSCC, and her failure to administer and advise Chandler about the wrongly and improperly installed bunks in the cells at SSCC, constitutes a deliberate indifference, gross negligence, and a complete disregard for providing a safe sleeping environment for inmates in SSCC."  *Id.* at ¶ 15.

**B.**

McIntosh also seeks to bring Eighth Amendment claims and negligence claims related to the treatment of his injuries suffered in the March 16 incident.  According to McIntosh, the inadequate medical treatment for his injuries led to a stroke that he suffered on June 18, 2021.  [R. 8, at 12-13, ¶ 39-40].  He also alleges that he received inadequate medical treatment after he was discharged from the hospital after his stroke.

Specifically, McIntosh alleges that, at various times, the following medical providers at SSCC and BCC were deliberately indifferent to his medical needs in violation of the Eighth

Amendment and/or committed malpractice with respect to McIntosh's

medical care:

> (1) Dennel Brown (Medical Provider (APRN) at SSCC) [R. 8, at
> 7-8, 11-12, ¶¶ 19-25, 36-37 (alleging Eighth Amendment and
> malpractice claims based on allegations of inadequate medical
> treatment)];

> (2) John Goff (Health Services Administrator at BCC) [R. 8,
> at 9, 12, ¶ 27, 37 (alleging Eighth Amendment claim based on
> allegations of inadequate medical treatment)];

> (3) Rick Richards (Medical Provider (APRN) at BCC) [R. 8, at
> 9, 11-12, ¶¶ 28-30, 36-37) (alleging Eighth Amendment, gross
> negligence, and malpractice claims based on allegations of
> inadequate medical treatment)];

> (4) Dr. Angela Clifford (Medical Provider at BCC) [R. 8, at
> 10-11, 13-16, ¶¶ 31, 35, 43-48, 50, 52-53 (alleging Eighth
> Amendment, gross negligence, and malpractice claims based on
> allegedly inadequate medical treatment, including grabbing
> McIntosh's neck in an "assaultive manner")];

> (5) Jonathan Bowen (Director of Nurses at BCC) [R. 8, at 10-
> 12, ¶¶ 33-34, 37 (alleging Eighth Amendment, negligence,
> gross negligence, and malpractice claims based on allegedly
> inadequate medical treatment)];

> (6) Nurse "Kem" at BCC  [R. 8, at 15, ¶¶ 49-50 (alleging
> Eighth Amendment and gross negligence claims based on alleged
> failure to provide medical aid)].

McIntosh also seeks to bring claims related to his medical

care against prison administrators Crews, Chandler, and Abby

McIntire (Warden at BCC).  [R. 8, at 8-9, 11-12, 36, ¶¶ 23, 25,

27, 36-37, 54].  He also names the Kentucky Department of

Corrections ("KDOC") and Wellpath Correct Care Solutions, the

entity contracted to provide Health Services for all KDOC

facilities, as Defendants.  [R. 8, at 2-3, ¶ 1, 5].  He sues all of the Defendants in both their respective individual and official capacities.  [R. 8, at 2-4, ¶¶ 1-10].

After conducting a preliminary review of McIntosh's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court finds that a response is required from the medical providers who provided medical care to McIntosh (Brown, Goff, Richards, Dr. Clifford, Bowen, and Nurse Kem), as well as their employer, Wellpath.[2] Because McIntosh in proceeding *in forma pauperis*, the United States Marshals Service ("USMS") will serve the summons and complaint on his behalf.  Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

However, McIntosh's Eighth Amendment and gross negligence claims made against the KDOC, Crews, Chandler, and McIntire will be dismissed on initial screening for failure to state a claim for which relief may be granted.

---

[2] The Court makes no finding as to the viability of any of McIntosh's claims against these Defendants.  Rather, the Court simply finds that, in light of the very liberal construction afforded McIntosh's amended complaint at this preliminary stage of the litigation, the next appropriate step is for these Defendants to file an answer or other responsive pleading as permitted by Fed. R. Civ. P. 12.

## II.  Claims Against the KDOC, Crews, Chandler, and McIntire

### A.  Official Capacity Claims

An "official capacity" claim against a state official is not a claim against the officer arising out of his or her conduct as an employee of the state, but is actually a claim directly against the state agency which employs them. *Hopper v. Phil Plummer*, 887 F. 3d 744, 760 n.4 (6th Cir. 2018); *Baar v. Jefferson Co. Bd. of Educ.*, 476 F. App'x 621, 634 (6th Cir. 2012) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of law.  Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n.55 (1978)).  McIntosh's "official capacity" claims against Crews, Chandler, and McIntire are, therefore, construed as claims against the KDOC, the agency that employs the Defendants, which McIntosh also names as a Defendant.

However, McIntosh may not pursue his claims against the KDOC, which is an agency of the Commonwealth of Kentucky.  *See* Ky. Rev. Stat. § 12.250.  First, with respect to McIntosh's Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983, state agencies are not suable "persons" within the meaning of 42 U.S.C. § 1983.  *See Polk County v. Dodson*, 454 U.S. 312, 324-25 (1981); *Kanuszewski v.*

*Mich. Dept. of Health and Human Servs.*, 927 F.3d 396, 417 n.11 (6th Cir. 2019). *See also Gibbons v. Kentucky Dept. of Corrections*, No. 3:07-cv-P697-S, 2008 WL 412847, at *1 (W.D. Ky. Sept. 4, 2008) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotation marks and citation omitted)).

In addition, the Eleventh Amendment of the United States Constitution specifically prohibits federal courts from exercising subject matter jurisdiction over a suit for damages brought directly against a state, its agencies, and state officials sued in their official capacities. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (recognizing that suits against states and state agencies "are barred regardless of the relief sought"); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 124 (1984). *See also Brent v. Wayne Co. Dept. of Human Servs.*, 901 F.3d 656, 681 (6th Cir. 2018); *Scott v. Kentucky Department of Corrections*, No. 08-cv-104-HRW, 2008 WL 4083002, at *2 (E.D. Ky. Aug. 29, 2008) ("the Eleventh Amendment has also been interpreted to extend immunity to State employees sued for damages in their official capacities."). Thus, McIntosh may not pursue his claims against the KDOC or its employees in their official capacities.

## B. Eighth Amendment Claims

McIntosh's Amended Complaint alleges Eighth Amendment claims against Crews and Chandler related to his allegations that the beds at SSCC were improperly installed, as well as Eighth Amendment claims against Crews, Chandler, and McIntire related to his medical care.

The Eighth Amendment "does not mandate comfortable prisons," but requires prison officials to provide inmates with "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987). Rather, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

A prison official violates the Eighth Amendment only when two requirements are met: (1) "the deprivation alleged must be, objectively, 'sufficiently serious,'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)) and (2) the prison official has a "sufficiently culpable state of mind," which is "one of 'deliberate indifference' to

inmate health or safety." *Id*. (quoting *Wilson*, 501 U.S. at 297) (other citations omitted).

With respect to the requisite state of mind, the Supreme Court has instructed that:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837 (citations omitted). Thus, to state a viable Eighth Amendment claim, an inmate must allege that a prison official: 1) was actually aware of facts giving rise to an inference of a substantial risk of serious harm; 2) actually drew that inference; and 3) consciously disregarded it. *Id*. at 837, 839; *see also Jones v. Muskegon Co.*, 625 F.3d 935, 941 (6th Cir. 2010).

With respect to his Eighth Amendment claims against Crews and Chandler related to his allegations that the beds at SSCC were improperly installed, McIntosh alleges that Crews and Chandler "knew or should have known" that the beds were improperly installed because of other "reported and non-reported" incidents where inmates fell out of bed while sleeping. However, McIntosh does not allege that any of these incidents were reported directly to Crews or Chandler, or that, even if they were, any of these

11

"reports" indicated that these incidents were related to improper installation of the beds. Thus, even if McIntosh's allegations are true, these allegations are insufficient to show that either Crews or Chandler were actually aware of facts giving rise to an inference that the beds were improperly installed and that the installation of the beds could lead to a substantial risk of serious harm, much less that either Crews or Chandler actually drew these inferences and that, despite this knowledge, they consciously disregarded the improper installation of the beds in deliberate indifference to prisoner safety.

Indeed, McIntosh's allegations against Crews and Chandler are consistently couched in terms of negligence, such as that Crews or Chandler "knew or should have known" that the beds were improperly installed because of these "reported and non-reported" incidents of one or more inmates falling out of bed while sleeping, and that prison officials "disregarded an open and obvious danger" and "created an unsafe sleeping environment" which "contributed to and proximately caused" an Eighth Amendment violation. [R. 8, at 5-7].

First, McIntosh's entirely conclusory allegations are insufficient to properly plead an Eighth Amendment claim, as "[l]egal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub.*

12

*Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.,* 604 F.3d 272, 276 (6th Cir.2010) (other citations omitted)); *see also Twombly*, 550 U.S. at 555.  Thus, vague allegations that one or more of the defendants acted wrongfully or violated the plaintiff's constitutional rights are insufficient to adequately state a claim for relief. *Laster v. Pramstaller*, No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. April 25, 2008).

Moreover, allegations that Defendants were negligent are insufficient to state a claim for an Eighth Amendment violation, as "[d]eliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (citation omitted). The subjective component of such a claim requires a showing that each Defendant was actually aware of substantial risk of harm to McIntosh yet, through his or her actions, consciously and deliberately chose to disregard that risk, a much more demanding standard than mere negligence. *Farmer*, 511 U.S. at 835; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)); *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir. 2005) ("[T]he requirement that the official have subjectively perceived a risk of harm and then

13

disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment.") (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

To the extent that McIntosh predicates his Eighth Amendment claims against Crews, Chandler, or McIntire based on facts that he alleges that they "should have known" based on their supervisory status as the Commissioner of the KDOC (Crews) or the Warden (Chandler and McIntire), a status as supervisor is an insufficient basis to bring an Eighth Amendment claim against them.  In the § 1983 context, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Rather, plaintiff must "plead that each Government-official defendant, through the official's own official actions, violated the Constitution." *Iqbal*, 556 U.S. at 676.  The mere fact that a defendant acted in a supervisory capacity is not enough. *Polk County*, 454 U.S. at 325-26. *See also Iqbal*, 556 U.S. at 677 ("[i]n a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer.").

14

In addition, with respect to McIntosh's Eighth Amendment claims related to his allegations of inadequate medical care, Crews, Chandler, and McIntosh are prison administrators, not medical professions. Nor does McIntosh make any allegation that any of these administrative Defendants were directly and personally involved in making medical decisions regarding McIntosh's medical care. *See Estate of Young v. Martin*, 70 F. App'x 256, 260-61 (6th Cir. 2003) (plaintiff failed to establish warden's personal involvement in inmate's medical care). To establish that non-medical personnel such as a warden or jailer was deliberately indifferent to an inmate's serious medical needs, the plaintiff must demonstrate that he or she intentionally prevented or interfered with a doctor's course of appropriate treatment, or directly or tacitly authorized the physician's clear mistreatment or neglect of an inmate, none of which is alleged here. *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004) ("If a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."). *See also Coleman v. Lappin*, No. 6: 10-CV-186-GFVT, 2011 WL 4591092, at *6-7 (E.D. Ky. 2011) (collecting cases). McIntosh does not allege that either Crews, Chandler, or McIntosh personally and intentionally interfered with

any specific medical treatment that was actually ordered by medical providers.

Finally, McIntosh also seeks to pursue a claim against Crews for her response to a denial of an administrative grievance that McIntosh submitted to McIntire regarding Dr. Clifford's treatment of McIntosh. [R. 8, at 16, ¶ 54]. According to McIntosh, Crews "failed to address all the issues requested by the plaintiff" and "stated that she found plaintiff's complaints to be without merit," which McIntosh claims constitutes "gross negligence and deliberate indifference" in violation of the Eighth Amendment. However, prison officials are not liable under § 1983 for denying or failing to act on grievances. *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008). *See also Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004) (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)). Thus, merely responding to a grievance regarding medical care is not a basis to impose liability. *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

For all of these reasons, McIntosh's Eighth Amendment claims against Crews, Chandler, and McIntire will be dismissed.

### C. **Gross Negligence**

McIntosh's amended complaint also alleges that Crews and Chandler were "grossly negligent" with respect to the installation of the beds at SSCC and that Crews, Chandler and McIntire were "grossly negligent" with respect to his medical care. Kentucky law distinguishes between claims of "negligence" and "gross negligence." Under Kentucky law, "to establish negligence, a plaintiff must demonstrate the existence of a duty, breach thereof, and consequent injury, which includes 'actual injury or harm to the plaintiff and legal causation between the defendant's breach and the plaintiff's injury.'" *Moore v. Zydus Pharms. (USA), Inc.*, 277 F. Supp. 3d 873, 881–82 (E.D. Ky. 2017) (quoting *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003); *Mullins v. Commonwealth Life Insurance Company*, 839 S.W.2d 245, 247 (Ky. 1992)). However, "[e]stablishing gross negligence requires 'something more than the failure to exercise slight care.'" *Id.* at 882 (quoting *City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001)(other citation omitted)). In *City of Middlesboro*, the Kentucky Supreme Court recognized that "gross negligence" requires "an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed the act was malicious or willful." *City of Middlesboro*, 63 S.W. 3d at 181 (quoting *Cooper v. Barth*, 464 S.W.2d 233, 235

(Ky. 1971)). *See also Horton v. Union Light, Heat and Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985) (where gross negligence is used as the basis for punitive damages, "there must be first a finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by "wanton or reckless disregard for the lives, safety or property of others," an "element not distinguishable from malice implied from the facts.").

Here, McIntosh fails to allege facts that, if true, are sufficient to establish that either Crews, Chandler, or McIntire acted with malice or wanton disregard for McIntosh's safety. As with his Eighth Amendment claims against them, McIntosh's allegations of "gross negligence" and "deliberate indifference" against Crews, Chandler, and McIntire are not supported by allegations of fact but are instead entirely conclusory. It is fundamental that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. *See also Heyne*, 655 F.3d at 563-64.

For these reasons, McIntosh's conclusory allegations that Crews, Chandler, and McIntosh acted with "gross negligence" are insufficient to adequately allege that any of these Defendants acted with malice or willfulness. *See Stuart v. Lowe's Home*

18

*Centers, LLC*, 737 F. App'x 278, 281 (6th Cir. 2018) (plaintiff's "rote recitations of the elements of the claims under which he seeks to hold [defendant] liable and conclusory statements as to why those elements are met" are insufficient to survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state a claim for relief).  Thus, McIntosh fails to adequately allege a gross negligence claim against any of these Defendants.

McIntosh is clear that the claim that he seeks to pursue against Crews, Chandler, and McIntire is a claim for "gross negligence," not ordinary negligence.  [R. 8, at 2, Preliminary Statement].  While the Court construes *pro se* pleadings with some leniency, it cannot create claims or allegations that the plaintiff has not made.  *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009) (Sutton, J., dissenting) ("when a *pro se* litigant asks us to identify any potentially winning arguments in his lower court pleadings, he is asking us to create, not correct, potential disparities in the legal system.").  Because McIntosh fails to adequately allege a gross negligence claim against Crews, Chandler, and/or McIntire, his gross negligence claims against them will be dismissed.

### III.  Motions for Relief

### A. Motion to Appoint Counsel

McIntosh has also filed a motion for appointment of counsel, claiming that appointment of counsel is warranted because he is unable to afford counsel; that he is currently recovering from a traumatic brain injury as a result of the fall from his bed on March 16, 2021, which causes cognition problems and anxiety; that he is unskilled in the law and litigation and will need assistance with presenting and cross-examining medical witnesses; and that this case is complex due to the large number of supervisory officials that he has named as Defendants and his request for a jury trial.  [R. 11].  However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right and is justified only in exceptional circumstances." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003).  When considering whether to grant such a request, the court considers the complexity of the case, the movant's likelihood of success on the merits of the claim, and the ability of the plaintiff to represent himself competently.  *Cleary v. Mukaskey*, 307 F. App'x 963, 965 (6th Cir. 2009).

The Court has considered the relevant factors and concludes that this case does not present the kind of extraordinary circumstances which would warrant the appointment of counsel for McIntosh.  Contrary to his assertions, the claims asserted by

McIntosh are not unduly complex and McIntosh has adequately presented them in his complaint.  Moreover, despite his claims of cognitive difficulty, McIntosh has drafted and filed a complaint, amended complaint, and several motions for relief which are organized, readable, and demonstrate a basic ability to present facts and applicable law.  Thus, McIntosh's motion requesting the appointment of counsel will be denied.

### B. Motion to Hold Plaintiff's Custodians in Contempt

McIntosh has also filed a "Motion for the Court to Hold Plaintiff's Custodians in Contempt."  [R. 12].  This Court previously entered an Order to direct McIntosh to pay $10.75 as an initial partial filing fee and further directing his custodians to deduct 20% of his monthly income from his inmate trust found account and pay it to the Clerk of the Court towards the payment of the entire $350.00 filing fee.  [R. 7]. In his motion, McIntosh claims that his custodians have not complied with these instructions in what McIntosh believes is an "attempt to thwart his access to the Courts by avoiding deducting the filing fee payments."  As relief, he seeks "an order in civil contempt imposing a compensatory fine in the amount of $90.00 each to Commissioner Cookie Crews, Warden Abigail McIntire, UA1 Cathi Johnson, and CTO Brett Arnett."  [R. 12, at 10, ¶ 40].

However, this motion will be denied for multiple reasons. First, as this Memorandum dismisses the claims against Crews and McIntire, and as there are no claims against Johnson and Arness, none of the named persons against whom McIntosh seeks relief are before the Court, thus it has no authority to impose the relief McIntosh seeks.  Moreover, McIntosh has suffered no prejudice in this action related to any non-payment or delayed payment of the filing fee.  Thus, he fails to show that he has been denied meaningful access to the courts, which requires a showing of an actual injury to a specific claim, including allegations of the facts and the law in the underlying claim, and a demonstration that underlying claim was non-frivolous. *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011). *See also Thomas v. Dickson*, No. 18-2317, 2019 WL 6005487, at *2 (6th Cir. 2019); *Clark v. Johnston*, 413 F. App'x 804, 812 (6th Cir. 2011).  Because McIntosh's claims in this case have not been dismissed and/or hindered in any way due to the non-payment of the filing fee, he has suffered no injury to his claims.

For these reasons, McIntosh's motion to hold his custodians in contempt will be denied.

Accordingly, **IT IS HEREBY ORDERED** as follows:

(1) McIntosh's tendered Amended Complaint [R. 8], construed as a motion for leave to file an amended complaint, is **GRANTED.**

22

Mcintosh's Amended Complaint [R. 8] supersedes his original complaint and is now the operative pleading in this case;

(2) McIntosh's claims against Dennel Brown, John Goff, Rick Richards, Dr. Angela Clifford, Jonathan Bowen, Nurse "Kem", and Wellpath Correct Care Solutions made in his Amended Complaint [R. 8] **REMAIN PENDING** and will be served in accordance with the instructions below;

(3) McIntosh's claims against the Kentucky Department of Corrections, Commissioner Cookie Crews, Warden Larry Chandler, and Warden Abby McIntire are **DISMISSED** and these Defendants are **DISMISSED AS PARTIES**;

(a) McIntosh's Motion for the Appointment of Counsel [R. 11] is **DENIED**;

(b) McIntosh's "Motion for the Court to Hold Plaintiff's Custodians in Civil Contempt" [R. 12] is **DENIED**;

(c) The Lexington Deputy Clerk shall prepare "Service Packets" for service upon Defendants Dennel Brown, John Goff, Rick Richards, Dr. Angela Clifford, Jonathan Bowen, Nurse "Kem," each in their individual and official capacities, and Defendant Wellpath Correct Care Solutions. The Service Packet shall include:

i. a completed summons form;

ii. the amended complaint [R. 8];

23

iii. the Order granting McIntosh *in forma pauperis* status [R. 7];

iv. this Order; and

v. a completed USM Form 285;

(4) The Lexington Deputy Clerk shall send the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket;

(5) The USMS shall make arrangements with the appropriate officials at the Southeast State Correctional Complex to personally serve one (1) Service Packet on Defendant Dannel Brown at:

> Southeast State Correctional Complex
> 327 Correctional Rd.
> Wheelwright, KY 41669

(6) The USMS shall make arrangements with the appropriate officials at the Blackburn Correctional Complex to personally serve one (1) Service Packet each on Defendants John Goff, Rick Richards, Dr. Angela Clifford, Jonathan Bowen, Nurse "Kem" at:

> Blackburn Correctional Complex
> 3111 Spurr Rd.
> Lexington, KY 40511

(7) The USMS shall send one (1) of the Service Packets **by certified mail**, **restricted delivery to addressee**, **return receipt requested**, to Wellpath, LLC's registered agent for service of process:

Corporate Creations Network, Inc.
101 North Seventh Street
Louisville, KY  40202

(8) McIntosh must immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**; and

(9) If McIntosh wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office.  Every motion McIntosh files must include a written certification that he has mailed a copy of it to the Defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This 25th day of May, 2022.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge